UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DILLON B. REEDER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | )   CASE NO.: |
| | ) |
| INDIANA STATE POLICE, and the | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT FOR DAMAGES AND DEMAND FOR TRIAL BY JURY**

Comes now the Plaintiff Dillon B. Reeder, by counsel, Michael E. Morken, for his Complaint for Damages and Demand for Trial by Jury, states as follows:

**I.   INTRODUCTION**

1. This is an action brought by Dillon B. Reeder ("Mr. Reeder") against the Defendant, Indiana State Police ("ISP"), between which parties there was an employment relationship. Defendant violated the Americans with Disabilities Act of 1990, 42 U.S.C. Sec. 12101, et seq. ("ADA"), as amended by ADA Amendments Act of 2008 ("ADAAA"), by terminating Mr. Reeder's employment relationship and failing to accommodate his disability. Defendants acted deliberately and violated the civil rights of Mr. Reeder on the basis of his disability.

**II.   EEOC COMPLIANCE**

2. Mr. Reeder exhausted all of his administrative proceedings available to him by timely filing a Charge of Discrimination on the basis of disability with the U.S. Equal Employment Opportunity Commission ("EEOC").

3. Mr. Reeder filed his initial Charge of Discrimination with the EEOC on September 11, 2015. A copy of Mr. Reeder's Charge is attached hereto and marked as Exhibit "1".

4. Mr. Reeder's Charge was timely filed in compliance with 42 U.S.C. Sec. 12117 and 42 U.S.C. Sec. 2000e-5.

5. Mr. Reeder received a "DISMISSAL AND NOTICE OF RIGHTS" from the U.S. Equal Employment Opportunity Commission on May 23, 2016. A true and accurate copy of the said "DISMISSAL AND NOTICE OF RIGHTS" is attached hereto and marked as Exhibit "2".

6. This action was timely filed within ninety (90) days of receipt by Mr. Reeder of the "DISMISSAL AND NOTICE OF RIGHTS".

### III.    JURISDICTION

7. Jurisdiction of the Court is invoked pursuant to 28 U.S.C. Sections 451, 1331, 1337 and 1343. This action is authorized and instituted pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. Sec 12101, et seq.

8. Jurisdiction to grant injunctive and declaratory equitable relief as well as to award damages is invoked pursuant to 42 U.S.C. Sec. 12117.

9. The alleged discriminatory acts were committed within the jurisdiction of this United States District Court for the Southern District of Indiana, Indianapolis Division.

### IV.    VENUE

10. Mr. Reeder is a resident of Morgan County in the State of Indiana, and is a citizen of the United States of America.

11. Defendant, Indiana State Police, is the statewide law enforcement agency for the State of Indiana.

12. Defendant, Indiana State Police's headquarters and administrative offices, are located in Marion County, State of Indiana.

13. The discriminatory acts under the ADA alleged below arose in Hendricks County, Indiana. Hendricks County is located in the Southern District of Indiana; therefore, this cause of action is properly venued in the Southern District of Indiana under 28 U.S.C. Sec 1391(b) which permits an action to be brought in the district where the Defendant resides or in which the cause of action arose.

**V.   PLAINTIFF**

14. Mr. Reeder is a citizen of the United States, and is currently, and he was during all times relevant to this Complaint for Damages a resident of Morgan County in the State of Indiana.

15. Mr. Reeder continues to reside in Martinsville, Indiana.

16. Mr. Reeder is a person entitled to protection under the ADA based on his disability.

**VI.   DEFENDANTS**

17. The Defendant, Indiana State Police, is an agency and/or department of the State of Indiana.  The Indiana State Police Training Academy is located at 5402 Sugar Grove Road, Plainfield, Hendricks County, Indiana.

18. The Indiana State Police headquarters is located at 100 North Senate Avenue, Indianapolis, Indiana 46204.

19. The Defendant, State of Indiana, is a governmental entity (state) which established and maintains the Indiana State Police as its law enforcement agency.

20. At times relevant to this action Defendants, Indiana State Police and the State of Indiana, employed Mr. Reeder.

**VII.    STATEMENT OF FACTS**

21.    Mr. Reeder's career goal (since he was a child) was to become an Indiana State Trooper.

22.    Mr. Reeder made application to the Indiana State Police, completed all testing and background investigation, and he was accepted to the Indiana State Police as a Recruit/Trainee.

23.    Mr. Reeder began working for the Indiana State Police (hereinafter "ISP") and the State of Indiana as a State Trooper Trainee at the ISP Training Academy on July 20, 2014. Mr. Reeder was in training in the ISP 74th Academy Class so that he could become an Indiana State Trooper upon graduation from the ISP Training Academy.

24.    The ISP training and education for the 74th Academy Class was primarily located at the Indiana State Police Training Academy (the "Academy") located at 5402 Sugar Grove Road, Plainfield (Hendricks County), Indiana.

25.    Mr. Reeder excelled in his training and education while at the Academy, but began to suffer a steady and significant weight loss while at the Academy, and he also became progressively weaker and would become exhausted while participating in physical training.

26.    Mr. Reeder was able to finish the week of training ending on Friday, November 7, 2014. On Monday, November 10, 2014, he was transported to the intensive care unit of St. Francis Hospital in Mooresville, Indiana, where he was diagnosed as a Type I diabetic.

27.    Mr. Reeder's diabetic condition had not been previously diagnosed. Mr. Reeder has Type I insulin dependent diabetes, a noncurable metabolic condition characterized by elevated blood sugar (hyperglycemia). Mr. Reeder's condition was not diagnosed until he was in training at the ISP Academy.

28. Diabetes is a physical impairment for Mr. Reeder, and eating and caring for himself are major life activities.

29. At the time of this diagnosis and hospitalization, Mr. Reeder had already completed approximately four (4) months of training at the Academy — even while suffering severe weight loss and other symptoms associated with the Type I diabetes condition.

30. ISP was informed of and had knowledge of Mr. Reeder's diagnosis of Type I diabetic condition on November 9, 2014, while Mr. Reeder was still hospitalized at IU Morgan County Hospital undergoing glucose reduction and the institution of insulin to control his Type 1 diabetes.

31. ISP required Mr. Reeder to provide a narrative report from his physician which would inform ISP of any restrictions imposed upon Mr. Reeder due to the onset of his Type I diabetes.

32. Mr. Reeder delivered such a report authored by his physician, Dr. Gary Midla, to ISP on November 17, 2014; in this report dated November 16, 2014, Dr. Midla restricted Mr. Reeder from participating in the physical part of his training but he was released to participate in the classroom portion. At this point, Mr. Reeder had missed only four (4) days of "in classroom" training due to his hospitalization.

33. Mr. Reeder also delivered a letter to ISP from Terry Sullivan, RN, dated November 12, 2014, which specified the dietary needs for a diabetic and included examples of appropriate meals and snacks to be provided to Mr. Reeder while at the ISP Academy. Provision of a specialized diet/meal was critical to the health of Mr. Reeder as a diabetic.

34. The narrative report from Dr. Midla and the letter from Nurse Sullivan explained the reasons why such restrictions were imposed on Mr. Reeder's physical activity and why the special

diet was necessary for Mr. Reeder. Mr. Reeder also personally advised Major Sorrels of ISP of these requirements.

35. As a recruit-trainee, Mr. Reeder was required to eat meals provided to him at the ISP Academy; meals were served to the Recruit Trainees for breakfast, lunch and dinner, and Recruit Trainees were not permitted to leave the ISP Academy while training during the week (Monday through Friday).

36. Mr. Reeder and Major Sorrels of ISP informally discussed these necessary adjustments in training and dietary needs, and such accommodations to his meal plan and his physical training were acknowledged by Major Sorrels who promised Mr. Reeder that ISP would make the necessary adjustments upon Mr. Reeder's return to the Academy so that Mr. Reeder could continue working. These reasonable accommodations were crafted in an interactive process.

37. While Mr. Reeder was in the hospital, Major Sorrells of ISP reassured him that he had already completed everything required by law to graduate from the ISP's Academy and that he would simply be required to finish his "in-classroom hours" and no physical training would be required. This was another accommodation to be implemented which had been reached between Major Sorrells and Mr. Reeder prior to his return to the Academy.

38. Although it transpired that these accommodations as identified by Mr. Reeder and Major Sorrells were only occasionally implemented, Mr. Reeder nevertheless resumed his training and education on November 17, 2014, believing ISP would in fact provide such accommodations.

39. Notwithstanding ISP's representations that appropriate meals would be provided, the specialized diet/meal plan for Mr. Reeder was not in fact provided by ISP.

40. Notwithstanding ISP's representation that Mr. Reeder would not be required to engage in the physical part of his training, ISP nevertheless required Mr. Reeder to continue with such physical training, including strenuous physical training, until December 10, 2014, whereupon Mr. Reeder was terminated as a Recruit/Trainee.

41. The accommodations which were to be implemented were also specified by Mr. Reeder's health care providers. Because Mr. Reeder directly provided letters from his health care providers to ISP, ISP knew of the specific physical limitations and medical directives for Mr. Reeder.

42. After returning to the ISP Academy on November 17, 2014, and after having again joined his classmates in the ISP 74th Academy Class, Mr. Reeder completed over three (3) weeks of additional training and education, largely without the benefit of the agreed upon accommodations.

43. After he returned to the ISP Academy, Mr. Reeder was permitted by ISP to make up the four (4) days of in-classroom training which he had missed while hospitalized; Mr. Reeder was able to do this by viewing the same video presentations which had been made to his classmates (in the ISP 74th Academy Class).

44. Also, after his return to the ISP Academy on November 17, 2014, in several instances of physical training, Mr. Reeder was told by his instructors that he was not required to participate (and could simply observe) because certain training was not required of him to graduate from the Academy; or in other instances, Mr. Reeder was told that he had already proved his competency and no further demonstration from him would be required.

45. Mr. Reeder did not present a direct threat to his own health and safety or that of others. That is, Mr. Reeder was not a significant risk of substantial harm to the health or safety of

himself or to the health and safety of others that cannot be eliminated or reduced by reasonable accommodation.

46.     On December 8, 2014, ISP required Mr. Reeder to undergo a medical evaluation (fitness for duty evaluation) by Steven Moffatt, M.D., the Medical Director for Public Safety Medical.  Mr. Reeder cooperated with this evaluation as ordered.

47.     Dr. Moffatt regularly works with ISP as a consultant in examining employees and providing fitness-for-duty opinions.

48.     On December 8, 2010, Dr. Moffatt, ISP's own consultant-physician, evaluated Mr. Reeder as requested to do so by ISP. At that point, Dr. Moffatt found Mr. Reeder had returned back to normal functioning and that within approximately 4 to 8 weeks after the placement of an insulin pump, prognosis was reasonably good that Mr. Reeder would be able to return to unrestricted activity. Dr. Moffatt advised ISP of his findings immediately.

49.     In correspondence with ISP, Dr. Moffatt also recommended that ISP not place Mr. Reeder in any strenuous physical activity until further insulin adjustment was provided regulating his glucose. This recommendation was consistent with prior recommendations made to ISP by Dr. Gary Midla.

50.     On December 8, 2014, Dr. Moffatt also faxed a note to ISP which stated his recommendations as follows:  "Limited Duty (transitional) - The examination indicates that a medical impairment currently exists that presently limits work assignment on the following basis, though the condition may be correctable and employment or job accommodation should be evaluated. Can be assigned to limited duty with the following work restrictions as of 12-8-2014."

The work restrictions (specifically set forth in Dr. Moffatt's evaluation which followed) included "no strenuous physical activity". The medical impairment referenced by Dr. Moffatt was diabetes.

51. That at the time that Dr. Moffatt's recommendation was made on December 8, 2014, with the exception of the "Quickening" exercise, there were only a few training days remaining and none of these days involved strenuous physical training.

52. That this four to eight week period stipulated by Dr. Moffatt (where Mr. Reeder would not have been required to engage in strenuous physical activity) would not have imposed upon ISP an undue burden; indeed, at this point, Mr. Reeder would have been arguably unable to participate in only one exercise which may have involved strenuous physical activity — the "Quickening".

53. The Quickening, a two day training exercise which took place at the Mascatatuck training site in Jennings County, Indiana, *was not required of all trainees*, and numerous exceptions have been made by ISP since the inception of the Quickening exercise. In fact, several other trainees of the 74th Recruit Class of ISP *were not required to complete the Quickening exercise*.

54. The Quickening exercise took place on December 17, 18, and 19, 2014.

55. After Dr. Moffatt transmitted his evaluation of Mr. Reeder to ISP on December 8, 2014, Mr. Reeder was suddenly ordered to report to ISP Superintendent Carter on December 10, 2015.

56. On December 10, 2014, *one day after the submission of the narrative report from Dr. Moffatt*, Mr. Reeder was told by Superintendent Carter of the ISP that he would not graduate from the Academy and that he was being terminated because "we did not realize how sick you were".

57. The termination of Mr. Reeder as a Recruit/Trainee by ISP served as a further unilateral withdrawal by ISP of the accommodations (previously promised) but which were not implemented, which made any further interactive process or engagement between Mr. Reeder and ISP impossible.

58. At no time did Mr. Reeder resign from his position as a Recruit Trainee from the ISP's 74th Academy Class; rather he was terminated as a Recruit Trainee in ISP's Academy because ISP refused to reasonably accommodate him.

59. Mr. Reeder is a qualified individual with a disability who, with or without reasonable accommodation, can perform the essential functions of an Indiana State Trooper Recruit/Trainee and a Indiana State Trooper which is the position he desired.

60. Mr. Reeder's ADA recognized disability was his Type I diabetic condition which is a physical impairment that substantially limited him in one or more major life activities.

61. That Mr. Reeder has a record of such impairment which substantially limited him in one or more major life activities is well documented and was communicated to ISP before Mr. Reeder returned to his training at the Academy on November 17, 2014, upon Mr. Reeder's discharge from the hospital.

62. That Mr. Reeder's employer, ISP, believed and regarded Mr. Reeder as having an impairment which substantially limited him in one or more major life activities.

63. Mr. Reeder is disabled within the meaning of and as defined in the ADA and any subsequent amendment thereto.

64. Mr. Reeder has suffered an adverse employment action — termination from his employment as a Recruit/Trainee of the ISP — as the result of his disability.

65. Under the ADA, ISP must provide Mr. Reeder, a qualified individual, with reasonable accommodation.

66. Mr. Reeder, an otherwise qualified individual with a disability, was also a victim of discrimination by ISP because ISP failed to make reasonable accommodations for Mr. Reeder's *known* physical limitations.

67. Mr. Reeder's physical limitations became known to ISP during ISP's undertaking an informal, interactive process with Mr. Reeder, who was in need of accommodation, wherein the appropriate reasonable accommodation was determined.

68. ISP terminated Mr. Reeder as a Recruit/Trainee at the very same time that ISP received the evaluation of Mr. Reeder by Dr. Moffatt, which contained the recommendations for accommodation for Mr. Reeder, and which stated that Mr. Reeder's prognosis was "reasonably good" that he could return to unrestricted duty as a State Trooper.

69. ISP terminated Mr. Reeder three (3) days before he was to have graduated from the Academy with his classmates. With such termination by ISP, Mr. Reeder suffered from an adverse employment action because of his disability.

70. Many of ISP's 74th Academy Class Recruit/Trainees who sustained physical injuries or contracted illnesses while training (who were not diabetic) received much better treatment from ISP than was received by Mr. Reeder, including their placement on restricted duty during the time that such recruits were suffering with their injuries/illnesses.

71. One of ISP's reasons given for termination — that Mr. Reeder did not complete certain classes/courses (e.g. the "Quickening") which were required for graduation — was pretextual as there were a number of Recruit/Trainees who did not complete certain training or

education — including the Quickening — yet were still permitted to graduate from the ISP's 74th Academy.

    72.    As a direct and proximate result of the foregoing conduct:

        (a)    Mr. Reeder incurred and continues to incur a substantial loss of past, present and future income;

        (b)    Mr. Reeder has lost the employee benefits provided by ISP;

        (c)    Mr. Reeder has suffered loss of and/or damage to his law enforcement career to which he aspired;

        (d)    Mr. Reeder has suffered mental and physical anguish; and

        (e)    Mr. Reeder has incurred additional financial losses, including the costs associated with invoking his federally protected civil rights.

**VIII.   STATEMENT OF CLAIMS**

    73.    Mr. Reeder incorporates the allegations contained in paragraphs one (1) through seventy-two (72) above and, in addition, asserts that the Defendants' acts and omissions in this matter discriminated against him because of his disability, his record of disability, and/or being regarded as having a disability, all of which is in violation of the ADA.

    74.    Defendants are engaged in an industry affecting commerce.

    75.    Defendants, Indiana State Police and the State of Indiana, have each employed fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding year.

    76.    Defendants, Indiana State Police and the State of Indiana, each satisfy the definition of "employers" within the meaning of Section 101 of the ADA, 42, U.S.C. Sec. 12111(5)(a).

77. Mr. Reeder is qualified to perform the essential functions of an Indiana State Trooper Trainee and an Indiana State Trooper with or without reasonable accommodation.

78. Mr. Reeder at all times relevant herein possessed the requisite skill, training, education and other employment-related requirements of the position as a ISP Trooper Trainee he held with the Indiana State Police and the State of Indiana and as a ISP Trooper at the time of his termination from ISP.

79. Consequently, Mr. Reeder is a qualified individual with a disability under 42 U.S.C. Sec. 12111(8).

80. Mr. Reeder is disabled within the meaning of the ADA; that is, he has a physical impairment, has a record of, and/or is regarded as having a physical impairment that substantially limits a major life activity.

81. At all times relevant herein, ISP and the State of Indiana were aware of Mr. Reeder's disability and his need for reasonable accommodation.

82. Reasonable accommodation for Mr. Reeder would not have been unduly burdensome to the Defendants.

83. ISP intentionally discriminated against Mr. Reeder when ISP failed to provide a reasonable accommodation as recommended by Dr. Midla, and Dr. Moffatt, ISP's own medical consultant, which was temporary and would not have imposed undue hardship on ISP.

84. Mr. Reeder's Type I diabetes was a motivating factor in ISP's decision to terminate Mr. Reeder's employment.

85. ISP's discharge of Mr. Reeder as an employee was a discriminatory action taken against him because of his disability, in violation of the ADA.

86. As a result of Defendants' discriminatory acts and omissions, Mr. Reeder has suffered and will continue to suffer monetary damages and damages for mental anguish, unless and until the Court grants relief.

87. ISP also discriminated against Mr. Reeder because of his Type I diabetic condition in many ways including, but not limited to, ISP's:

    (a)    withdrawal of its assurance and agreement for accommodation with Mr. Reeder that Mr. Reeder would not be required to participate in strenuous physical training and instead subjecting him to rigorous/strenuous physical training;

    (b)    withdrawal of its assurance and agreement with Mr. Reeder to provide for the special dietary needs of Mr. Reeder while he was in training at the Academy;

    (c)    disregarding the November 16, 2014, medical recommendations from Dr. Midla, Mr. Reeder's physician, which prohibited physical training at that time;

    (d)    disregarding the November 21, 2014, medical recommendations from Dr. Thomas Lahr, Mr. Reeder's physician, which also prohibited strenuous work at that time;

    (e)    disregarding the recommendations for light duty and other accommodations which were made by its own physician consultant (Dr. Moffatt) for Mr. Reeder on December 9, 2014, electing instead to terminate him from his employment;

(f) complying with accommodations as prescribed by physicians of other Trooper Trainees but disregarding the accommodations as prescribed by Mr. Reeder's physicians;

(g) exempting other recruit trainees who became ill or injured in ISP's 74th Academy from physical training but requiring Mr. Reeder, who was also ill, to nevertheless participate in rigorous physical training;

(h) issuing "restricted activity tags" to Mr. Reeder's classmates who were ill or injured so as to serve notice to the Academy staff that they were exempt from physical training while at the same time refusing to issue Mr. Reeder such a "restricted activity tag";

(i) allowing other recruit trainees and troopers to reschedule and complete training exercises missed due to illness or injury, but not offering to do the same for Mr. Reeder;

(j) referring to Mr. Reeder in a demeaning and disparaging manner because he had Type I diabetes and was discharged because of it.

## IX.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Dillon B. Reeder prays for a judgment in his favor against Defendants, and each of them, and prays that the following relief be awarded:

(a) Grant a permanent injunction enjoining Defendants, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in discrimination based upon disability and any other employment practice, which discriminates on the basis of disability, and

from engaging in retaliation against any of its employees, including its Troopers or any members of the 74th Academy Class.

(b)     Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for disabled individuals, including those individuals who have a condition known as Type 1 diabetes, and which eradicate the effects of its past and present unlawful employment practices, including those practices which were applied to Plaintiff during his attendance at the Indiana State Police Academy.

(c)     Order Defendants to make whole Mr. Reeder by providing appropriate back pay and front pay for actual damages with pre-judgement interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices including, but not limited to, Mr. Reeder's pecuniary losses.

(d)     Order Defendants to make whole Mr. Reeder by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including medical expenses, in amounts to be determined at trial.

(e)     Order Defendants to make whole Mr. Reeder by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices complained of above, including emotional pain, suffering, loss of enjoyment of life and humiliation, in amounts to be determined at trial.

(f)     To the extent that the law would so allow, the imposition of punitive damages, order Defendants to pay Mr. Reeder punitive damages for its malicious and/or reckless or opprobrius conduct described above, in amounts to be determined at trial.

(g)     Order Defendants to certify Mr. Reeder as a law enforcement officer and reinstate him as an Indiana State Trooper without requiring Mr. Reeder to return to the Indiana State Police Academy and undergo training which he has already successfully completed.

(h)     Order Defendants to pay Mr. Reeder his special damages, in amounts to be determined at trial.

(i)     Order Defendants to pay damages to Mr. Reeder for any and all injuries to his chosen career as a law enforcement officer in amounts to be determined at trial.

(j)     Award Mr. Reeder the costs of this action, including reasonable attorneys' fees, and any such further relief as the Court may deem just, proper and reasonable.

(k)     Grant such further relief as the Court deems necessary and proper in the public interest.

## IX.     RESERVATION OF RIGHTS

Pursuant to the rules of pleading and practice, Plaintiff reserves the right to assert additional violations of federal and state law.

## X.     JURY TRIAL REQUEST

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

S/ Michael E. Morken
Michael E. Morken
Attorney for Plaintiff, Dillon B. Reeder

MICHAEL E. MORKEN (#10037-49)
ATTORNEY AT LAW
2162 NORTH MERIDIAN STREET, SUITE A
INDIANAPOLIS, INDIANA 46202-1332
TELEPHONE: (317) 924-4801
FACSIMILE: (317) 924-6115
EMAIL: mmorken@hotmail.com